Case No. 09-3619, People v. Jamil Brown Would the lawyers who are going to argue the case please approach the bench and introduce yourselves, please. Good morning, Your Honors. My name is Robin Robertson. I'm with the Office of the State Appellate Defender. Good morning, Your Honors. My name is Whitney Bond. I'm with the Assistant State Attorney representing the People at the State of Oklahoma. I understand you have to reserve some time for your group. Yes, Your Honor. Good morning. Again, my name is Robin Robertson, and I represent the appellant in this matter, Ms. Jamil Brown.  I'd like to begin by addressing the third issue raised in the briefs regarding the excessive sentence imposed in this case. Jamil was convicted of first-degree murder on an accountability theory for the shooting death of Mr. Ogonini. She did not pull the trigger, she played a minor role, and she showed tremendous potential for rehabilitation. Despite this, the trial court imposed a 43-year sentence to be served at 100 percent time. What was the minimum? The minimum, Your Honor, was 35, 20 years on the offense, and there was a 15-year mandatory add-on for the use of a firearm. So what do you contend? How excessive was it, 43? What do you contend that 40 would have been okay and 42? It's our position that adequate retribution could have been served in this case by the imposition of the minimum sentence of 35 years. The sentence that was imposed eight years over the minimum, which was 20 percent over the minimum, we believe it did not Let's say we agreed with you that 35 would be the right, but that isn't our role here to decide what the trial judge should have imposed. What is our role in reviewing the sentence that was imposed? Certainly this court is entitled, in cases where they find that the trial court abuses discretion in selecting a sentence, this trial court, or excuse me, this court is allowed to So what if we were to say that eight years beyond the minimum was an abuse of discretion? Tough thing to say. Eight years is an abuse of discretion. We believe in this case, Your Honor, that that's not a hard thing to say. The trial court was required to consider the nature and circumstances of the crime, the defendant's conduct in the commission of the crime Is there anything in the record to suggest that he did not consider any of those items? He considered certainly the nature and circumstances of the crime. He discussed them in imposing his sentence. He touched upon Jamil's role in the commission of the crime, but he did not mention a single mitigating factor in this case, which we think is poignant. Not only that, when he mentioned her Was mitigation presented? Mitigation was presented, Your Honor. He presumably heard the mitigation. He heard the mitigation, but we do think it's noteworthy that when he mentioned her prior juvenile adjudication for aggravated battery, he made a comment that it occurred not long before this offense. In fact, it occurred five years prior. She was only 19 at the time. Five years is a fairly substantial period of time. Not only that, he failed to recognize what she did in the interim to better herself. She admittedly had this juvenile adjudication for aggravated battery, but it's noteworthy that she went on to successfully complete a year's worth of probation, and against the odds, she graduates from high school at the age of 17. She goes to college. She completes a semester of college away from home. She has financial difficulty, returns home, but she doesn't abandon her dedication to education. She enrolls at a local school, and she was actually a college student at the time of this incident. And you mentioned that she was not the shooter. She was not the shooter. She did not pull the trigger. What relationship did she have to the shooter? The shooter was the father of her unborn child, Your Honor. He was her boyfriend of eight months at the time. Do you think that might have had a spillover effect? And do you think that's out of bounds for a judge to consider, that maybe had she spoken up, her boyfriend wouldn't have done what he did? She, in fact, said she testified, or excuse me, she didn't testify, but in her statement she told the officers that she told him not to go forward with this plan, that she initially did try to dissuade him from participating in this plan. And while this case involves an undeniably tragic series of events, it is noteworthy that there was no intent to kill here. These three young adults did not set off that day with the ultimate goal of, as the state suggests, cold-bloodedly hunting down a victim. There simply was not a shred of evidence to support that assertion. They had a very loose, amorphous plan to rob an armored vehicle, and once the shooting happened, unexpectedly, as a surprise to Jamil, as she conveyed in her statement, they aborted the plan that they had earlier and fled the scene in what Jamil described as a state of panic, fear, and a state of shock. And we simply believe that in this case, the fact that the crime was not premeditated, that she was not the trigger person, her role in the event, that there was this amorphous plan to rob this armored vehicle, we think that her knowledge of only the most nebulous details about this plan suggests that she didn't spend a week honing and crafting this plan to rob an armored vehicle. She agreed to go along with this idea that her boyfriend has. It was a bad decision. We do not dispute the fact that it was a bad decision. But given her tremendous potential for rehabilitation, we simply believe that a sentence 20 percent above the minimum does not accurately, it indicates that the court did not fully consider her tremendous potential for rehabilitation. This is a young lady who we think it's undeniable that she can and will contribute to society when she's released. She's shown that in numerous ways. When she stood and spoke in allocution, she didn't say anything that was, she wasn't offering excuses. She simply used her time to stand, express her remorse, and extend her condolences to the victim's family. For those reasons, for these reasons and those in the opening brief, we simply ask that this court either reduce her sentence or remand the matter for resentencing. I'd like to turn now to the second issue that was raised in the briefs regarding prosecutorial misconduct. I'd like to address two of the instances that we discussed in the brief regarding the introduction of the unrelated weapons as well as the State's argument in closing fixating upon the victim's character and his family. Yeah, let's talk about those closing arguments. Pardon me? Do you think the closing arguments deprive the defendant of a fair trial? I certainly do, Your Honor. I think that numerous things about the closing arguments deprive the defendant of a fair trial. Here, the State initially peppers its argument with comments about the decedent, his character, the fact that he was an immigrant, he was a hardworking individual. They improperly ask the jury to empathetically identify with this victim. He was a hardworking individual, just like you and I, basically. And then focusing on the impact that this crime had on the victim's family. They discuss it. Initially, it could have been seen as an incidental discussion. Is it wrong to talk about the victim in a closing argument? It's not wrong to talk about the victim, but not to this extent. It's fairly clear that it's misconduct. The prosecutor has an obligation to refrain from comments, which encourage the jury to return a verdict based on emotion rather than rational deliberation. Is that even a possibility, that it could have been a verdict based on emotion, given that it was accountability, given that she was present, given that she knew the weapon went into the vehicle as she did, given that she was, all of these basically uncontested facts. Is there any possibility that she was not accountable for what occurred? The question that we put to this court is not that one. The question, and it's undeniable that Jameel Brown was entitled to a fair trial free from prejudice. The prosecutor's duty... The question was whether the argument swayed the jury to look, to not focus on the facts and to render its verdict based on emotions. And I'm suggesting that the facts themselves were simply so clear that emotions weren't necessary to render a guilty verdict because the facts themselves compelled a guilty verdict. If the jury rendered a verdict based on anger, based on hatred, based on passion, if that infected their deliberations, that was improper. And Jameel Brown was entitled to a fair trial regardless of the strength of the evidence, whatever it may have been. Here, and this court has decided in numerous cases where there was overwhelming evidence of guilt, the state's actions depriving the defendant of a fair trial were so egregious that they warranted a new trial. What case comes to mind when you're making that argument? There are numerous cases, Your Honor. And how close are those cases to this case? We believe that the numerous instances of misconduct, bringing in these weapons which were terribly inflammatory, wholly unconnected to the incident, and then bringing them in in numerous formats, presenting them to the jury and then arguing them in closing, bringing in this evidence that fixates upon not only the decedent's family but the hardship that his death inflicted upon their family. This court has found that, yes, you can mention family. We're not going to expect that juries believe that the victim exists in a vacuum without any surviving members of the family. But it has time and again said, when you take that to the point of saying, not only did he have a family, but they were dependent upon one another, they were financially dependent upon the victim, that's where you've crossed the line. And that's exactly what the state did in this case. And touching upon the weapons, this is a case that did not involve anything other than a shotgun. And yet the state brings in explosives and knives, wholly unconnected to the event, brings them in not only in their physical form, they bring in photographs of these items, they elicit four pages of testimony describing the discovery and the collection of these items, and then they go on to discuss the knives in closing argument. Those items were undeniably prejudicial. I'm not sure this court has ever found that the introduction of unconnected weapons is proper and okay. It was clearly error. And the state took it further in this case than in cases where this court has found it to be harmless or not problematic, where the weapon wasn't brought before the jury, it was just mentioned by a police officer incidentally. That's not what happened in this case. The state made a calculated decision to bring in this unconnected evidence and then to use it in closing argument to support their allegation that these three individuals, this was a question of accountability, and the state used these weapons to tie these three individuals together and to say they set off that day as a trio that were prepared to use these very dangerous weapons in accomplishing their goal of robbing this armored vehicle. That, tied with the other prosecutorial misconduct allegations in our brief, we believe brought this case to the point where there's this pattern of intentional misconduct which undermine the integrity of the proceedings such that reversal under the second prong of the plain error doctrine is appropriate. We'll give you time for rebuttal. Thank you. How about your closing arguments here, the closing arguments? Did the state push the envelope? No. First and foremost, if the defendant had a problem with the state's closing argument, they should have objected to it at trial. They should have included it in the post-trial version. Do they really need to object? Not here. Certainly not. These arguments were entirely proper. We'll break them down. With specific regard to the mentioning of the victim's family, what the prosecutor did was make three small statements that was simply reiterating everything that the victim's son had testified to or that had come out of the defendant's mouth during her statement. The jury wasn't hearing anything that was something that they didn't already know or didn't put the pieces together already. They knew that this defendant wanted to rob a McDonald's or wanted to rob money to get a McDonald's because he couldn't go broke, and in doing so, they killed a man. The jury knew that. The state's attorney was just reiterating that a family lost its father because of these defendant's actions. Certainly there was no reason to object, but if the defendant had an issue with these arguments, they should have objected and they should have included it in a post-trial motion. The bottom line is, no matter how proper these arguments were, even attacking it on appeal goes nowhere because the defendant cannot meet plain air. This defendant argues that this, quote-unquote, these repeated acts of prosecutorial misconduct rise to the level of plain air, not under the first prompt, but specifically under the second prompt. These prosecutorial misconduct, these errors, they were a structural error, and as this Court is well aware, structural error is very specific, very narrow, approximately seven incidents of structural error in which a defendant can challenge a waived or forfeited issue under plain air, and this defendant cannot meet that burden. Well, are you telling me that whenever there's an improper argument in closing, it cannot be a structural error? Yes. Absolutely. Yes. There's seven very specific reasons why arguments can rise to the level. Let me give you an example. Sure. What if in a case a prosecutor says that the defendant is a child molester, but the case has nothing to do with child molesting? Is that a structural error? I mean, can juries just disregard that type of statement? Well, certainly that would be objected to. Wouldn't that be a structural error? No, that would be a serious, serious error. It would be a serious error, but when I talk about structural error, I talk about total deprivation of right to counsel. I talk about lack of impartial judge. I talk about defective legal instruction. Structural error also involves error that is so serious that it affects the entire proceedings. There could never be a fair trial because what is said. Right. It's as if the child never existed. I thought your argument was that there was no error, but that the closing arguments were based on inferences drawn either directly from the evidence or recently drawn from the evidence. That's exactly our argument. So structural error sort of gets us down a different path. It gets us down a plain error route. We don't have to go to. The point of the people's argument is simply that the defendant cannot meet plain error, period. Weapons do present a concern because it seems to me that I'm not sure the role those weapons, the liquid filled bottles, aluminum topped and lighter fluid in the same bag, I don't see what that information, that evidence really, how it fit into your case of accountability against this individual. Well, certainly what we're trying to do here is we're trying to separate out the contents of the backpack from the backpack, and that should not be done here. What did the backpack have to do at all? Oh, the backpack was part and parcel to the entire crime. I mean, this started out as this grandiose scheme, the robin armored car. Did the weapon, the sawed off shotgun, ever get put into that bag by someone? Yes. The defendant stated that when she first saw the sawed off shotgun, that sawed off shotgun was in the black backpack in co-defendant Elliot Peterson's apartment. She later states that when they left the apartment with the shotgun to undertake their mission, that the co-defendant Peterson had the gun. And after the shooting was over, she testified. So that black backpack remained in the apartment the entire time? No, it didn't. What she said is that after the shooting was over, he placed the gun in the book bag. Then the book bag ends up back at co-defendant Peterson's apartment where it's found by investigators. It was when she first mentions the backpack, it was in the closet where the room where she first saw the shotgun. Are you saying that this black bag was with them during the entire time that they were out looking for a cab? It's a reasonable inference that the backpack was with them the entire time. She first says that she saw the shotgun in the backpack. She said that after the shooting was over, the shotgun was placed back into the book bag. And once the entirety of the situation is over and they're investigating the apartment, investigators find the backpack in the kitchen with the contents that are now at issue before this court. It's the people's position that everything that was in that backpack was part and parcel to the entirety of this crime. Because what we seem to forget here, obviously, the idea that they're going to rob this armored car ends with the shooting, unfortunately, of the victim. She even testifies that had the victim not been shot, that they would have continued on in this foray. And that in the backpack, and specifically, nobody ever talks about the bottles being explosives or Molotov cocktails as the defendant characterizes. It was a reasonable inference for the jury to draw, and I assume your office wanted them to draw it because it was also a canister or a can of lighter fluid in the bag as well. I can't presume that I would say anything what the trial assistant was doing. My job is to state that essentially there was no error here in admitting the backpack. Because, again, defendant knew about it. You earlier said that there were only three statements regarding the family. Yes. How many statements were there regarding the weapons? One. Regarding the contents of the bag. One. There was one statement out of the total of 39 pages of closing argument. One of the state mentions, state doesn't mention, and look at these knives and look at these explosives, and they were part of this whole plan. Essentially what she does is she says, look, there's three defendants, there's three knives. They're dangerous. She draws the analogy. She's not saying that they used the knives or that the knives were at all tied to the crime or that the knives were used to lure the victim out of the cab. Essentially what she's just saying is that these three defendants were dangerous, and they were. Regarding the sentence, will you acknowledge that an offense committed five years earlier when the defendant is only 19 is a long time? With regard to the aggravated battery in juvenile court? Just five years earlier. That's a long time away. I mean, I can't even imagine anyone having committed a crime at the age of 13 or 12 or 11. It seems like 14 would have been the earliest, and that seems like a long time. She was a teenager at that point, or a pre-teen, or just barely a teenager, and now she is a mother at 19. Well, there's a lot of 13 and 14-year-olds who can go through life and not commit crimes, not commit aggravated batteries. So regardless of whether or not it happened five years before she was complicit in a brutal murder is irrelevant. Well, I thought the judge said not that long after her juvenile. Right, something like that. I certainly don't think that his statement that not that long after rises to the level of abusive discretion. This is a case where, as the trial court characterized it, found that it was a classic case of man's inhumanity to man for their own benefit. This is a horrible crime. This is a crime that was born out of a desire to just rob money, get money. And this victim happened to be, while he wasn't part of it to begin with, robbing the armored car, he certainly ended up a victim, dying in an alley when they took his phone, they took his clothes, disposed of his things, and drove away. He didn't call for help, didn't call 911, went to a Walgreens and bought a Butterfinger. It's difficult to argue. She didn't address the first issue, and I think the first issue can be laid to rest. And so I think you've talked about the two issues that she did raise. You can certainly wrap it up for us. I apologize. For these reasons and those in our brief. I'll put some water on it. That always helps. And I certainly think that it's no... It's certainly understandable that you... I shouldn't get upset, but you know what? I believe it's... This trial court did not abuse its discretion. We all do it sometime in our life. You know, it happens. Believe me. But I'm holding it together. The trial court did not abuse its discretion. I don't believe that, and the people don't believe that. Eight years above the minimum is something that this defendant didn't deserve. I mean, the trial court specifically reiterated that it considered all that. Her lengthy testimony in both aggravation and mitigation knew that she was a young mother, knew that she came from a great family, and still found that this was an extremely inhumane crime. For these reasons and those outlined in our brief, we ask that you affirm the defendant's conviction. Thank you very much. Thank you. Just briefly, Your Honors. First, I'd like to address the argument that no statement in closing argument can rise to the level of plain error. In People v. Johnson, this... I think Justice Gordon pretty much made that... I will move on then. We understand what the law is on the subject matter. Too broad of a statement to really hold up. Thank you, Your Honors. Second, the... That doesn't get you over much of a hurdle, though, because the real problem is whether three statements or one statement could ever amount to structural error, because if it did, structural error would simply disappear from being that sort of error that entitles a defendant to an automatic new trial, regardless of the strength of the evidence. That is a very, very serious conclusion to reach, and it is rightly a very high bar to get over. We know that, Your Honors, but we do believe that in this case the numerous instances brought this case to that level where she was denied her right to fair trial. But this case cited by the State, People v. Johnson, does say that... And it's interesting, they cited it for a different reason, but the Supreme Court said that family information, which does not exist within a dependent relationship, does not fall within the confines of the plain error review. The opposite is true in this case. Not only were... These weren't brief mentions. The State was focusing on the dependent relationship that existed between not only the victim and his family in America, but his family back in Nigeria. They characterized it as three small statements. The initial statements may have been small, but then they caused... Let me suggest this, that if it comes to that point where the State's attorney is reaching into the jury box to incite their passion, then I think that's a situation, if it really is the case, would trigger an objection by defense counsel. When there is no objection by defense counsel, it suggests that it's all part of the evidence and it is simply a brief. He doesn't expect it to linger too long. Your Honor, I think it's irrefutable that evidence regarding the victim's character and the family that's left behind and the impact that the crime has on the family has no place in a fair trial. And here the State intentionally elicited this information when they were conducting their direct examination of the son. The jury has to be told what sort of person this is. They have to humanize the person, the victim, because if the victim isn't center of the State's case, then they may not have much of a case at all. But the problem that this Court has identified is where you say, yes, there's a victim. There's also the defendant's deserving of punishment because this victim is such an impressive character. He's even more deserving of his death is even more deserving of retribution in this case because he was an immigrant who was trying to live the American dream or because he left a family behind in America and family in Nigeria who were financially dependent upon him. That is the problem. If this were an identification case or if this were a person who left right before the killing occurred, there might be a reason for claiming that this crossed the line. But when the evidence is so clear, it seems hard to be able to get to that point where we say it's structural error. Fair enough. We still maintain that it arose to the level of plain error. The only other thing I'd like to touch upon is the discussion of these weapons. The State discusses the possibility, the reasonable inference perhaps, that this backpack was involved in the crime. It was found four days later in Elliot's apartment. There was no gun in the backpack. There were no shell casings in the backpack. There was nothing inside of the backpack which tied it to the offense. And it's unknown what was in the backpack, if it was even there during the commission of the offense, what was inside of it inside the backpack at the time. During the discussion of this plan to rob the armored vehicle, there's never mention of the use of explosives or knives to achieve the goal. And, you know, the nature of the evidence itself, you've got two beer bottles that are loosely capped with tin foil. The State removed the liquid from their beer bottles for trial because it's not a secure seal. The idea that those bottles were in this backpack and being carried through this entire incident is simply preposterous. The fluid would have leaked out. There's just simply no evidence to say that these items, even if the backpack were there, that these items were in that backpack. They were brought before the jury for the sole purpose of inflaming passions to create hatred and fear and to say, as counsel says, let's paint these as especially dangerous individuals. Let's put a knife in the hand of Jamil when she was otherwise an unarmed person who was standing feet away when this unexpected crime occurred. So for these reasons and those stated in the opening brief, we would ask that this court find that the prosecutorial misconduct in this case rose to the level of plain error and reverse the remand for a new trial. Thank you. Thank you guys very much. It was a very interesting case, very well-prepared briefs and very well-prepared oral arguments and very interesting. You gave us a very interesting case and we'll take it under advisement.